UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN A. WESTFALL, | No. 2:19-cv-0957 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence and the subjective testimony was erroneous.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 4 & 7.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

**PROCEDURAL BACKGROUND**

In June of 2016, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on December 2, 2015. (Transcript ("Tr.") at 16, 252-58.) Plaintiff's alleged impairments included back pain, leg cramps, major depressive disorder, migraines, and sleep disorder. (Id. at 288.) Plaintiff's application was denied initially, (id. at 177-81), and upon reconsideration. (Id. at 184-88.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 30, 2017. (Id. at 91-111.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 91-95.) In a decision issued on June 15, 2018, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since December 2, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: exogenous obesity, headaches, peripheral neuropathy, cervical spine radiculopathy and myofascial strain, gastroesophageal reflux disease, status post failed spinal surgical syndrome (July 2008 initial surgery and October 2009 corrective surgery), degenerative disc disease of the lumbar spine with radiculopathy, sciatica due to displacement of the lumbar spine disc, bilateral shoulder sprain/strain, depressive disorder and post-traumatic stress disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders or scaffolds; can never work at

unprotected heights; must avoid concentrated exposure to moving mechanical parts, humidity and wetness, extreme temperatures, vibrations and noise; and is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks; using judgment limited to simple work-related decisions; and socially interacting appropriately to the public frequently.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1972 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 18-28.)

On May 2, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's June 15, 2018 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 26, 2019.  (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

////

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

////

////

////

4

**APPLICATION**

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence was erroneous; and (2) the ALJ's treatment of the lay witness testimony constituted error.[3]  (Pl.'s MSJ (ECF No. 12) at 7-19[4])

### I.    Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

////

---

[3] The court has reordered and reorganized plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

Here, plaintiff challenges the ALJ's treatment of the opinion offered by Dr. Navin Mallavaram, a treating physician and board-certified pain management specialist.[5] (Pl.'s MSJ (ECF No. 12) at 12-16.) On August 23, 2016, Dr. Mallavaram completed a Chronic Pain Residual Functional Capacity Questionnaire form, opining that plaintiff was limited in various respects. (Tr. at 593-96.)

The ALJ discussed Dr. Mallavaram's opinion as follows:

> The undersigned accords limited partial weight to the opinions of the claimant's treating pain management specialist, Dr. Navin Mallavaram, to the extent consistent with the residual functional capacity above. For example, the opinions that the claimant has no significant limitations with reaching, handling, or fingering and can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds are supported by the record. However, the opinion that the claimant is "unable for physical work" is a determination reserved for the Commissioner. Further the doctor's other opinions that the claimant is limited to sitting, standing, and walking two hours in an eight-hour day and that the claimant required a cane in June 2015 are not supported by the record including imaging studies as detailed above.

(Id. at 26) (citations omitted).

That is the extent of the ALJ's vague and conclusory discussion of the treating opinion offered by Dr. Mallavaram. Although the ALJ purported to afford Dr. Mallaram's opinion "partial weight," and found that some aspects of the opinion were "supported by the record," several aspects of Dr. Mallavaram's opinion were not addressed by the ALJ or accounted for by the ALJ's residual functional capacity determination. For example, Dr. Mallavaram opined that plaintiff's symptoms were frequently severe enough to interfere with attention and concentration necessary for simple tasks. (Id. 594.) That plaintiff required a job that permitted shifting at will. (Id. at 595.) That plaintiff would be absent from work more than four days per month as a result of plaintiff's impairments. (Id. at 596.)

////

---

[5] The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

A claimant's residual function capacity ("RFC") is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Moreover, to the extent the ALJ rejected Dr. Mallavaram's opinion that plaintiff was "unable for physical work," because that "is a determination reserved for the Commissioner," the ALJ erred. (Tr. at 26.) "'In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Therefore, "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

Nor could the ALJ rely on the vague assertion that Dr. Mallavarm's "other opinions" were "not supported by the evidence of record including imaging studies[.]" (Tr. at 26.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Mallavaram's opinion. Plaintiff, therefore, is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

## II. Lay Witness Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the third-party testimony constituted error. (Pl.'s MSJ (ECF No. 12) at 8-11, 16-19.)

### A. Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else

8

disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ recounted plaintiff's testimony, in relevant part, as follows:

> The claimant described his symptoms in written submissions in connection with this determination to medical professionals and at the hearing.  He alleged an onset date corresponding to the day after the last unfavorable determination, December 2, 2015.  Prior to the hearing he alleged that he was unable to work due to chronic severe back pain, leg cramps/radiculopathy, major depressive disorder, migraine headaches, and sleep disorder.  At this hearing, he described his impairments as causing low back pain and leg cramps.  He reported being able to sit and stand 30 minutes at a time, walk only 10 minutes at a time and lift up to 10 pounds.  He stated that he is "constantly tired," wakes up 2-3 times a night due to leg cramps, and has problems concentrating.
>
> \*\*\*
>
> Turning back to his more recent hearing testimony, he reported having a one-time injection trial which did not help, so the procedure

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect.  "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).  The ALJ's decision here, however, was issued on November 25, 2015, prior to the implementation of SSR 16-3p.

> was not repeated.  He conveyed that it was ultimately determined that only pain medications worked well enough to continue.  He stated having last had physical therapy in 2014, but had just returned to physical therapy and was using a TENS unit.  He reported that the VA prescribed use of a cane four months ago, but prior to that, it was not prescribed.  He reported that he uses cane in his home to climb stairs, and that in a typical day he performs no household chores lies on couch, sits on the couch, reads, watches television, and does "not a lot" in a typical day.  He states that he does nothing for exercise, sports, or leisure, but also stated that he uses the internet to reads (sic) about current events daily.
>
> He testified that the "highlight of his day" is checking the mail.
>
> ***
>
> Turning to the claimant's alleged mental impairments, he reported attending mental health counseling through the VA monthly and attending group sessions occasionally for PTSD that is triggered by "certain noises."  He conveyed that he had been taking psychiatric medications for approximately two years, but that they do not help.  He reported that PTSD affects him "constantly," that he cannot be around other people, and that it is hard to explain.

(Tr. at 21-22.)

The ALJ then simply concluded that the "evidence of record" did "not support the claimant's assertions of pain and dysfunction."[7]  (Id. at 22.)  After discussing various items of evidence, the ALJ found that "while the medical evidence supports a finding that the claimant has 'severe' impairments, the objective findings on imaging studies and the course of medical treatment do not support the claimant's allegations of an inability to perform *all* work."  (Id. at 24) (emphasis in original).

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject

---

[7] Strangely, the ALJ also appears to have rejected plaintiff's testimony based on a finding that plaintiff "has been able to father a child[.]" (Tr. at 22.)  It is entirely unclear how the ability to "father a child," discredits a plaintiff's testimony.

10

a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

The ALJ then concluded the analysis of plaintiff's testimony with the boilerplate statement that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Id. at 25.)

"ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC. By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

For the reasons stated above, the court finds that the ALJ failed to offer a clear and convincing reason for rejecting plaintiff's testimony.

**B.     Third Party Testimony**

After rejecting plaintiff's testimony, the ALJ addressed testimony offered by third parties. The ALJ did not specifically identify the identity or specific testimony of any third party. Instead, the ALJ said simply, "Although the undersigned did carefully consider the third-party witness statements, because they are the statements of the claimant's family members and based upon the claimant's subjective complaints, the undersigned considers them in that light and accords them less probative weight." (Tr. at 26.)

////

11

However, the testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

In this regard, the mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter,166 F.3d at 1298; see also Smolen, 80 F.3d at 1289 ("the same could be said of any family member who testified in any case"). "Clearly, family members who see the claimant on a daily basis are competent to testify as to their observations." O'Bosky v. Astrue, 651 F.Supp.2d 1147, 1163 (E.D. Cal. 2009).

For the reasons stated above, the court finds that the ALJ failed to offer any germane reason for rejecting the lay witness testimony. Accordingly, the court finds that plaintiff is also entitled to summarize judgment on the claim that the ALJ's treatment of the subjective testimony constituted error.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

////

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose. The ALJ failed to provide legally sufficient reasons for rejecting the opinion of a treating physician, plaintiff's testimony, and the testimony of multiple third-party witnesses. If that evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. In this regard, at the November 30, 2017 hearing, a Vocational Expert testified that a person with the limitations opined by Dr. Mallavarm would be unable to obtain a job. (Tr. at 108-09.) And the record as a whole does not create serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security Act.[8]

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the payment of benefits; and

////

////

////

////

---

[8] In addition to the improperly rejected evidence, the record includes a finding from the Department of Veterans Affairs that plaintiff had a "90% final degree of disability." (Tr. at 440.) "[A]n ALJ must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated:  September 16, 2020

DLB:6
DB\orders\orders.soc sec\westfall0957.ord

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE